```
            THE UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF TEXAS
                   HOUSTON DIVISION

                     *  *  *  *  *

UNITED STATES OF AMERICA    *    CRIMINAL NO. 10-732-02
                            *
Versus                      *    Houston, Texas
                            *    3:15 p.m. - 3:39 p.m.
LIA SAMIRA ST. JUNIUS       *    November 1, 2011

                     *  *  *  *  *

                      SENTENCING

              BEFORE THE HONORABLE DAVID HITTNER
                UNITED STATES DISTRICT JUDGE

                     *  *  *  *  *
```

**THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED BY COURT ORDER.  UNAUTHORIZED REPRODUCTION WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN ORIGINAL AND ONE COPY AT THE OFFICIAL RATE.**
            **General Order 94-15, United States**
       **District Court, Southern District of Texas**

              Proceedings recorded by computer stenography
              Produced by computer-aided transcription

                        *Edward L. Reed*
                      United States Court Reporter
                       515 Rusk, Suite 8016
                   Houston, Texas 77002 * 713-250-5594

```
 1  APPEARANCES:

 2  For the United States of America:

 3      MR. SAMUEL J. LOUIS
        MS. SUZANNE R. BRADLEY
 4      United States Attorney's Office
        919 Milam, Suite 1500
 5      Houston, Texas 77002

 6  For the Defendant:

 7      MR. GERALD FRY
        Attorney at Law
 8      801 Congress Avenue
        Suite 350
 9      Houston, Texas 77002

10  Probation Officer:

11      SHANNON YAEGE

12  Court Reporter:

13      EDWARD L. REED

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            THE COURT:  Court calls the case Criminal
 2   Matter 4-10-732, United States versus Lia St. Junius.
 3            Who represents the Government?
 4            MR. LOUIS:  Sam Louis for the United States,
 5   Your Honor.
 6            THE COURT:  And for the defense?
 7            MR. FRY:  Gerald Fry for the defendant, Your
 8   Honor.
 9            THE COURT:  Mr. Fry, you've got a number of
10   letters I want to discuss.  You've got a number of pages
11   of objections.  So let's start in.  I think we're doing
12   okay timewise.
13            I have letters.  And by the way, the court
14   reporter has a copy of these names, so, as I go through
15   them, I'm not reading them, hopefully, before he can get
16   them down.  He's got a copy of them.  I ran copies.
17   These are the letters that I read.
18            First of all, there were 11 educational
19   certificates of various sorts.  There are letters from:
20   The defendant herself, three pages, handwritten.  Her
21   mother, Lula Reese.  Alethia Price.  Cousin, Shrunda
22   Young-Johnson.  Cousin, Erica Catalon.  Cousin, Donetta
23   Price.  Cousin, Clarice St. Junius.  Aunt, Deborah
24   Williams.  A parent of a friend that is Algie Bailey.
25   A family friend, Tasmia Maple.  Best friend, Amariesha
```

```
 1  Egins, E-g-i-n-s.  And a brother, Xavier Mitchell.
 2              Okay, there is also -- I'm going down and
 3  reading in sequence your objections.  The response to
 4  the objections, as you probably note, is a repeat of a
 5  couple of Roman numerals.
 6          MR. FRY:  My Roman numerals were a little off.
 7          THE COURT:  Right.  So there are two number
 8  VII's and two number XIII's if I remember.  I'm going to
 9  address them and going to refer to them as like, for
10  instance, the first VII and the second.  But I'll also
11  announce what sections you are objecting to so it's an
12  easy cross-reference.  So I've gone down and I've done
13  that whole thing.
14              Defendant objects to Paragraph 1.  The
15  defendant was not a conspirator from 1999 until 2010,
16  but only worked in the Mobility Store from January '05
17  to January '08.
18              Response:  Count One sets out the duration
19  of the conspiracy.  Acts and omissions of others can be
20  considered pursuant to Guideline 1B1.3(a)(1)(B).
21              Object to Paragraph 12 concerning
22  testimony of handwriting expert.
23              Response:  The defendant never notified
24  Medicare.  Defendant also was aware of other fraudulent
25  signatures.  Under 1B1.3, she can be held responsible
```

1  for all reasonably foreseeable acts and omissions of
2  others.
3              Objection to Paragraph 13 concerning
4  Missouri and California locations.  And see the
5  discussion of that same thing.  I'm not going over it
6  again.  That's also addressed in Number II, response to
7  Objection No. II.
8              Objection No. IV, which is an objection to
9  Paragraph 19.  Objection that Johnson was responsible
10 for billing and never got involved in any Medicare
11 money.  That was the responsibility.
12             Response:  Defendant ran the office when
13 co-defendant was not available.  Submitted claims to
14 Medicare for Medicare fees for the ortho kit.  Defendant
15 profited millions of dollars in fraudulent payments from
16 Medicare and Medicaid.  She had signatory authority on
17 the Medicaid.  She had signatory authority on the bank
18 accounts.  Check cards were linked to St. Junius and
19 Reese.  Both had signatory authority.  She was living a
20 lavish lifestyle.  This was all testimony at trial.
21 Purchased an $800,000 home and luxury cars:  As best we
22 can recall and looking through it, two Bentley
23 automobiles, one Rolls Royce Phantom,  and a Mercedes
24 550C.
25             There is an objection to Paragraph 22.

```
 1  The defendant never received any Medicaid money.  And
 2  again, it's a reference back to see the explanation in
 3  the answer Number VI.
 4              Objection to No. 25 paragraph because the
 5  whole office had access to accounts.
 6              Once again, just for shorthand sake, see
 7  the responses as to Objections No. IV and V.
 8              No. VII, the first No. IV, which is an
 9  objection to Paragraph 29.  The money was for Reese's
10  personal use.
11              Response:  Information received from Case
12  Agent and Lopez's testimony is referred to.  It
13  discusses the percentage allocation and the various
14  accounts.
15              Objection second No. VII.  Objection to
16  paragraph 35 concerning disbursement of funds as to the
17  sub-accounts.
18              Response:  See response to Objection the
19  first No. VII paragraph immediately preceding.
20              No. 9.  Objection to Paragraph 37.  The
21  defendant never supervised anyone and never was the "go
22  to" person.
23              Also, the house was purchased, the
24  $800,000 home, by another defendant from casino
25  winnings.
```

```
 1                    Response:  Fort Bend County Appraisal
 2   District shows the house was in defendant's name.  Also,
 3   as previously discussed in detail and in testimony at
 4   trial, the defendant made business decisions for the
 5   company and handled financial aspects of the business.
 6                    No. X, which is an objection to Paragraph
 7   46.  The defendant had nothing to do with the marketing.
 8                    That objection is granted.  No enhancement
 9   has been given and has been corrected in the Presentence
10   Report.
11                    Objection No. XI, which is to Paragraph
12   48.  Defendant never supervised or managed anyone.
13                    Response:  The defendant was trained to
14   run the company, perform duties of office manager when
15   needed, sign checks for marketers.
16                    Paragraph XII was an objection to
17   Paragraph 49.  Never held a position of trust, and it
18   states she was merely a clerk.  And the plus two points
19   for abusing position of trust, defendant's position is,
20   should be removed.
21                    Response:  The defendant was the face of
22   the DME company, and Medicare applications were in her
23   name and other details as set out in the responses to
24   the objections.
25                    Roman Numeral VIII, the first VIII.
```

1  Objection to Paragraph 71 relative to defendant's
2  medical equipment.
3           Response.  No objection.  That is so
4  noted.
5           The second Objection VIII was an objection
6  to Paragraph 72.  Defendant said she never thought -- in
7  fact, I needn't go into that.  It was about a health
8  matter that occurred at the Federal Detention Center,
9  and she took issue with that, and the information was
10 received directly from the defendant, and the
11 Federal Detention Center medical records will suffice.
12 But it is in the report.  I don't think there is any
13 need to go out and discuss it in public unless either
14 side wants me to do so, okay?  We'll keep some
15 confidentiality.
16           Paragraph XIV, objection to Paragraph 76.
17 The defendant does not want to now pursue an education
18 in cosmetology or barbering.  She wants to be a nurse.
19           That clarification is so noted.
20           Paragraph 90 objection, which is defense
21 Objection No. XV.  Health care fraud is a 10-year max.
22 The Guideline should be up to 120 months and not where
23 the Guideline is now, 135 to 165 months.
24           And the response is a citation, basically,
25 to Guideline 5G1.2(d) concerning one or more counts can

```
 1  run consecutively.
 2              As to what you have in writing, any
 3  additions or corrections by the Government?
 4          MR. LOUIS:  No, Your Honor.
 5          THE COURT:  Any corrections or additions by the
 6  defense?
 7          MR. FRY:  No, Your Honor.
 8          THE COURT:  All right.  Except as noted that
 9  were granted or modified, all objections are overruled.
10  The Pre-sentence Report and all addendums are hereby
11  adopted by this Court.
12              Counsel, do you desire to make a statement
13  on behalf of your client?
14          MR. FRY:  Yes, I do, Your Honor.
15          THE COURT:  Yes, sir.
16          MR. FRY:  Lia St. Junius was raised by a father
17  that deceived her.  He broke the trust as a father.
18  James Reese needed somebody to open the Mobility Store
19  because he had a long criminal record.  He got his
20  daughter.  She was the only father she knew since she
21  was seven years old.  She worked there, but she didn't
22  work 40 hours a week.  She was doing 20 hours a week.
23  His goal was to try to train her to run the company.
24  She never got trained.  She's working less hours than
25  she should have, 20 hours.  She'd worked in mailing,
```

1  shipping.  She would file documents in folders.  She
2  would enter data -- do data entry for the Medicare
3  benefits, and she'd get that off of another sheet of
4  paper.
5           He did lavish a lot of gifts on her and a
6  lot of money on her.  He took advantage of her.  And I
7  think that the Court ought to consider that under 18,
8  3553.  And I would argue that the Court ought to come
9  down some on the Guidelines, that possibly a sentence --
10 Brenda got 43 months.  Maybe give her somewheres in the
11 double, 80 months.  But I don't think that she should be
12 three times the sentence as say Brenda would get.  I
13 think Brenda participated much more than Lia ever did.
14 So I would argue --
15         THE COURT:  Did Brenda get any Bentleys, get a
16 $800,000 house, get any Rolls Royces or Mercedes?  Did
17 the young lady get all that sort of stuff also?
18         MR. FRY:  No, but James Reese set it up.  It
19 was not like she's out trying to get more and more.  He
20 says, "I'm going to give you this."  She didn't say no.
21 She could have said no, she didn't say no.  But she was
22 not actively scheming to try and make more and more
23 money.  He made all the decisions.  He decided to give
24 her money and there is no question she got a lot more
25 money than Brenda ever did.

1                And I would argue that under 18, 3553,
2    that twice Brenda's sentence would be an appropriate
3    sentence.
4           THE COURT:  Ms. St. Junius, do you desire to
5    make a statement in your own behalf?
6           DEFENDANT ST. JUNIUS:  Yes, sir, I would.  I
7    just want to say that I do apologize to the United
8    States and the Government.  I apologize to Medicare and
9    Medicaid and to the patients.  Your Honor, like my
10   counsel said, James Reese has been my father since I was
11   seven years old.  He came to me when I was 18 and said,
12   you know, I want to open this company up for you so you
13   could have something in the future and so forth.  I
14   believed him, I trusted him.  I expected things to go
15   the right way.  I never in a million years thought that
16   this would be happening to me that's happened to me.  I
17   mean, as a parent, I think parents are supposed to lead
18   kids by example and children follow that example and you
19   expect your parents to lead you down the right path.
20   You don't expect things of this nature.  I mean, before
21   this incident, I never had a reason to not trust him and
22   not believe anything he told me.
23              To be honest with you, during trial is
24   when I realized and I learned the truth behind
25   everything that really happened, because he always

1  assured me that nothing was wrong and everything was
2  fine.  And, you know, they knew that he was teaching me
3  the company.  He said, "If FBI ever came and talked to
4  you, you know, just tell them that they know that I'm
5  your dad and they know that I'm teaching you the
6  company," which I was expecting the FBI come speak with
7  me, but I never spoke with anyone.  Nobody ever came and
8  talked to me and told me nothing.
9            Your Honor, I just ask that you have mercy
10 on me for these circumstances.  I have a sick mother
11 that I desire to be with that's hurting and in pain
12 behind this.  This whole incident has been a nightmare,
13 it really have.  Besides my having -- my background or
14 whatnot, for the rest of my life will be destroyed.
15 It's a scar on my life.  I have a 10-year-old little
16 brother that looks at me and he want to know when am I
17 ever coming home.  When are you going to come sit in my
18 football games and whatnot.
19           Your Honor, to be honest with you, it
20 probably is my fault, that I probably should have been
21 around.  I should have been paying attention and knowing
22 what really was going on.  But I wasn't because I put
23 everything in his hands, like he told me to.  And if I
24 did know exactly what was going on, I assure you I
25 wouldn't be standing here today.

1                    THE COURT:  All right, Government's position?
2                    MR. LOUIS:  I agree with some of what she said,
3    which is, number one, I do agree that loved ones are
4    supposed to set good examples.  And in this case, from
5    what I have read and seen and through the investigation,
6    she did not have good examples.  But during this trial
7    we learned that Ms. St. Junius lied when Medicare called
8    to verify over and over and over again who was the owner
9    of this company.  They talked with her, we listened to
10   tapes where there were conversations back and forth.  We
11   saw documents that were submitted all for the purpose of
12   continuing that lie, which is that she was the owner of
13   the company and James Reese wasn't.  And the reason they
14   did that is so they could live this fairy tale life,
15   fairy tale to everybody else, but not to them, to have
16   this lavish cars, to have these houses, to be able to go
17   to the casino and spend all the money they wanted to, to
18   walk around with thousands of dollars in their pockets.
19                    Certainly, she did receive some guidance
20   from Mr. Reese, but she's standing here not because
21   Mr. Reese told her to do these things and she couldn't
22   decipher.  She's a grown-up.  She knew when they called
23   and they asked who was the owner of this company, is
24   James Reese involved in this company, and she submitted
25   when there was a question about the Reese Group and the

1  Mobility Store, what's the association, she continued
2  that lie so that they could have a provider number so
3  they could do what?  Get these millions of dollars.
4           So she's got to accept responsibility not
5  for simply being failed by her parents, but not making
6  the right choice in deciding not to get involved in
7  this, not to continue that lie.  Because she had many
8  opportunities to say, "I'm out of here, enough is
9  enough."  But she didn't do that until the Government
10 came to arrest her.
11          So it's within the Court's discretion to
12 sentence her.  I'll leave that up to the Court.  But
13 she's not here because of somebody else.  Certainly, she
14 had bad examples, but she made a decision to be involved
15 in this, she took all the benefits of it.  And now,
16 unfortunately, it's time to be able to be responsible
17 for the consequences of those actions.
18          THE COURT:  All right, counsel, do you know any
19 reason why your client should not be sentenced at this
20 time?
21          MR. FRY:  No, Your Honor.
22          THE COURT:  The Guidelines have taken into
23 account the intended loss amount attributed to the
24 defendant's actions, role and abuse of trust.  However,
25 due to the grouping roles in 3D1.1, the defendant's

1  Guideline calculation was not impacted by the
2  $3.7 million that she assisted Reese and Lopez to
3  launder.
4              For all reasons that I previously gave,
5  my observation at trial, and the reasons given in the
6  responses to the objections, I think the following
7  sentence is considered reasonably sufficient, but not
8  greater than necessary to satisfy the sentencing
9  objectives as set forth in 18 United States Code,
10 Section 3553(a).  And in effect, all of those are
11 reasons for where I'm sentencing within the Guidelines.
12             The defendant is hereby committed to the
13 custody of the Bureau of Prisons, to be imprisoned in
14 the federal penitentiary without parole as follows:
15             She's to be imprisoned for a term of 60
16 months as to Count 1S, 120 months as to Count 10S
17 through 16S, and 135 months as to Count 33S, all
18 totaling a total amount of imprisonment of 135 months.
19 That's 11-and-a-quarter years.
20             Upon release from imprisonment, she'll be
21 placed on supervised release for a term of three years.
22 This term consists of three years as to each of Counts
23 1S, 10S through 16S, and 33S, all such terms to run
24 concurrently.
25             Within 72 hours of release from the

```
 1  custody of the Bureau of Prisons, the defendant shall
 2  report in person to the Probation Office in the district
 3  to which she's released.  While on supervised release,
 4  she'll not commit another federal, state or local crime,
 5  shall comply with the standard conditions that have been
 6  adopted by the Court under General Order H-1996-10,
 7  abide by any mandatory conditions required by law, and
 8  comply with the following additional conditions:
 9            The defendant shall not possess a firearm,
10  ammunition, destructive device, or any other dangerous
11  weapon.
12            The defendant is prohibited from
13  employment or acting in a fiduciary role during any term
14  of supervision.
15            And I find it interesting that she wants
16  to be a nurse after assisting in all of the concerns
17  that we discussed today in the health care business.
18  So, therefore, the language that we've used with each
19  defendant generally to the effect that she'll not have
20  any employment or education in any medical-related field
21  as to the defendant, because she said she wants to be a
22  nurse and for other reasons, of course, that she
23  committed all these acts within this case itself.
24            The defendant is required to provide the
25  Probation Officer access to any requested financial
```

1  information and will be prohibited from incurring new
2  credit charges or opening additional lines of credit
3  without approval of the Probation Officer.
4              She'll cooperate in the collection of a
5  DNA sample from the defendant if the collection of such
6  sample is authorized, pursuant to Section 3 of the DNA
7  Analysis Backlog Elimination Act of 2000.
8              It's further ordered that had she will be
9  jointly and severally liable with defendants Reese and
10 Lopez to pay restitution in the amount of $8,651,805.76.
11 Of that amount, Johnson is jointly and severally liable
12 with Reese, Lopez, and St. Junius in the amount of
13 $4,015,934.40, all to be payable to DHHS/CMS, Division
14 of Accounting, and it's in Baltimore, Maryland, and the
15 address will be in the final judgment.
16             The defendant's restitution obligation
17 shall not be affected by any restitutions made by other
18 defendants, except to the extent that no further ones
19 will be due once it's fully covered all compensable
20 loss.
21             It's ordered she additionally pay to the
22 United States a special assessment of $900.  That's $100
23 for each of her felony convictions.
24             Let's see, what about a fine in this case?
25 Is that applicable at all relative to any dollar amounts

```
 1  as compared to the other defendants?
 2           PROBATION OFFICER:  Your Honor, are you talking
 3  about in lieu or in addition to restitution?
 4           THE COURT:  Restitution will be sufficient.  Do
 5  you agree with that?
 6           PROBATION OFFICER:  Yes, Your Honor.
 7           THE COURT:  All right.  I just wanted to make
 8  sure.  I don't need to hear from the Government because
 9  that's my inclination.
10               Having assessed the defendant's ability to
11  pay, the $900 is due immediately, balance due in 50
12  percent of any wages earned while in prison, in
13  accordance with the Bureau of the Prisons Inmate
14  Financial Responsibility Program.  Any balance remaining
15  after release from imprisonment will be due in equal
16  monthly installments of $200, to commence 60 days after
17  the release from imprisonment to a term of supervision.
18  Payment is to be made through the U.S. District Clerk's
19  Office, Southern District of Texas.
20               Now, any forfeiture?
21          MR. LOUIS:  Yes, Your Honor.
22          THE COURT:  Let me have it, please.
23          MR. LOUIS:  In the amount of $8,561,805.76.
24          MS. BRADLEY:  Actually, Your Honor, that's
25  incorrect.  It actually should be $8,651,000 --
```

```
 1              THE COURT:  Again, 8 million --
 2              MS. BRADLEY:  651,000 --
 3              THE COURT:  Okay.  Hold it, 8,651,000 --
 4              MS. BRADLEY:  -- $805.76.
 5              THE COURT:  All right, I'm making the
 6   correction.  If you want to submit a corrected one
 7   later, we'll just substitute it.
 8              MR. LOUIS:  Thank you, Your Honor.
 9              THE COURT:  That is so noted and it's signed.
10              Anything further?
11              MR. LOUIS:  No, Your Honor.
12              THE COURT:  The defendant is notified that she
13   has the right to appeal the jury verdict -- that is the
14   judgment in this case -- and the sentence of this Court
15   and the right to appointment of counsel on appeal if she
16   can't afford one.
17              Anything further from the Government?
18              MR. LOUIS:  No, Your Honor.
19              THE COURT:  Anything further from the defense?
20              MR. FRY:  The defendant does wish to appeal the
21   judgment and the sentence.  She does not have the money
22   to retain an attorney.  She wishes an attorney to be
23   appointed.  I'd like to have permission to withdraw from
24   the case and another attorney appointed to represent her
25   on the appeal.
```

```
 1         THE COURT:  Talk to the case manager later as
 2  soon as the judgment is signed in this case.  Once it
 3  comes up from the Probation Department and I sign it, I
 4  will consider it.
 5         All right, thank you.  We'll stand
 6  adjourned in this matter.
 7         [Proceedings adjourned]
 8
 9              REPORTER'S CERTIFICATE
10
11  I certify that the foregoing is a correct transcript
12  from the record of proceedings in the above-entitled
13  cause.
14
15  /s/ Ed Reed                              1-9-12
    Edward L. Reed                           Date
16  Official Court Reporter
17
18
19
20
21
22
23
24
25
```